HOWARD M. BISCOE *vs.* TAX COMMISSIONER.
ARTHUR W. BLACKMAN *vs.* SAME.

Suffolk.     May 17, 1920. — June 23, 1920.

Present: RUGG, C. J., CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Tax*, On income, Exemption.

Income received from the United States as salary by one, who, before the proclamation by the President of the United States on December 26, 1917, assuming control of all transportation systems, was a vice-president in charge of the operation of a railroad corporation and thereafter continued in charge of the operation with duties practically the same as before, is by St. 1916, c. 269, § 5 (b), exempted from taxation as income under the provisions of that statute.

The exemption from taxation upon income under St. 1916, c. 269, § 12, provided by § 5 (b), for the "wages and salaries of employees and officers of the United States government," applies to income received from the United States as salary by one, who, before the federal government assumed control of the transportation system as above described, was employed as assistant counsel of a railroad corporation in Massachusetts and who thereafter continued to hold that position under the management by the federal government with practically no change of duties.

PETITIONS, filed in the Superior Court respectively on November 23 and on November 28, 1919, under St. 1916, c. 269, § 20, appealing from the refusal of the Tax Commissioner to abate income taxes alleged by the petitioners to have been assessed upon salaries received by them from the United States as officers and employees of the federal government in violation of § 5 (b) of the statute.

In the Superior Court the petitions were heard together by *Hammond*, J., upon an agreed statement of facts. Material facts are described in the opinion. The judge reported the cases for determination by this court upon the pleadings and the agreed facts.

The cases were submitted on briefs.

*G. H. Fernald, Jr.*, for the petitioners.

*J. W. Allen*, Attorney General, *L. Powers & E. H. Abbot, Jr.*, Assistant Attorneys General, for the respondent.

PIERCE, J.    These are petitions under St. 1916, c. 269, § 20, for the abatement of income taxes assessed on the petitioners;

and by report from the Superior Court they are before this court upon the pleadings and agreed facts. In each case the answer admits that a tax was assessed upon the petitioner in the manner and of the amount set forth in the petition; that the petitioner duly applied for an abatement of the tax, and upon the denial of his application seasonably filed this petition.

St. 1916, c. 269, § 12, provides that "Every individual inhabitant of the Commonwealth . . . whose annual income from all sources exceeds two thousand dollars shall annually make a return of his entire income, except income derived . . . (f) from wages or salaries received from the United States." St. 1916, c. 269, § 5 (b), provides that "The wages and salaries of employees and officers of the United States government shall not be taxed."

On December 28, 1917, the petitioner Biscoe was vice-president of the New York Central Railroad Company in charge of the operation of the Boston and Albany Railroad. The President of the United States, by proclamation dated December 26, 1917, took possession and assumed control on December 28, 1917, through the Secretary of War, of all transportation systems as defined in said proclamation. These systems included the railroad corporations by whom the petitioners were employed. Biscoe continued in charge of operation as vice-president until he was appointed federal manager of the Boston and Albany Railroad by the regional director on June 10, 1918. His salary and, "as a practical matter," his duties remained the same. He was required to sever his official relation "with the particular Companies and to become the exclusive representative of the United States Railroad Administration."

On December 28, 1917, the petitioner Blackman was assistant counsel in Massachusetts of the New York, New Haven, and Hartford Railroad ·Company. After the proclamation of the President of the United States he continued to hold his position under the title of assistant counsel until the autumn of 1918, when the title of his office, without change of duties, was changed to assistant solicitor.

During the entire year of 1918 both petitioners "received . . . instructions solely, either directly or indirectly, from the Director General of Railroads through the latter's representatives." The

salaries of the petitioners during the entire year of 1918 were paid out of funds from the following sources: money taken over by the United States on December 28, 1917; money earned thereafter by the railroads under federal control; and money received from the treasury of the United States. The question presented is whether the salaries of these petitioners received from the United States during the year 1918 are "wages and salaries of employees and officers of the United States government."

The property of the railroads by the proclamation passed into the possession, control and operation of the Director General on December 28, 1917, for the purposes and to the limit set forth, and at the same time necessarily passed from the railroad to the United States to a like degree. *Northern Pacific Railway* v. *North Dakota*, 250 U. S. 135, 144. *Public Service Commissioners* v. *New England Telephone & Telegraph Co.* 232 Mass. 465, 470. During the entire year of 1918 each petitioner received his salary from the moneys of the United States. Whether the money paid out at the order of the United States was paid before or after it had been covered into the treasury of the United States is a matter of indifference to the determination of any question now at issue. During the entire year of 1918 each petitioner received his instructions from the United States government solely through the Director General of Railroads through his representatives. It would seem to be plain that any relation of employee that existed between these petitioners and the railroad on December 28, 1917, ceased to exist when the control of the railroads passed to the United States government, and that a new relation began with the consent of the petitioners and continued to exist during the year 1918 between the petitioners and the United States government, represented by the Director General.

We do not agree with the contention of the respondent that the exemption of a federal salary extends only to the extent that "If the federal salary exceed two thousand dollars, the federal official can claim no specific deduction in addition to the exemption; if his federal salary be less than two thousand dollars he may claim as a deduction only the difference between the two thousand and his federal salary." The federal salary is exempt under St. 1916, c. 269, § 5 (b); and without such statute would be exempt for the reasons expressed in *Dobbins* v. *Commissioners of*

*Erie County,* 16 Pet. 435, 450, and in *Collector* v. *Day,* 11 Wall. 113. *Evans* v. *Gore,* 253 U. S. 245.

We discover no substantial distinction in the facts to differentiate the relation and legal right of Blackman from that of Biscoe.

It follows that an abatement of the entire tax assessed should be made upon each petition, and that the amount thereof shall be repaid to the petitioners by the Treasurer and Receiver General, with interest at the rate of six per cent per annum from the time when the tax was paid, and costs.

*So ordered.*