JAMES C. COLGATE *v.* ERWIN M. HARVEY.

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed November 14, 1934.

*Theriault & Hunt* (*E. J. Dimock* of New York City, of counsel) for the plaintiff.

*Lawrence C. Jones,* Attorney General (*Guy M. Page* and *Seymour P. Edgerton* of counsel) for the defendant.

POWERS, C. J.   The petitioner, a resident and taxpayer of Bennington, Vermont, brings this proceeding under section 27, Part I, of No. 17, Acts of 1931, known as the Income and Franchise Tax Law, seeking relief from the rulings of the tax commissioner fixing the amount of his income tax for the year 1931.   The real basis of the petition is the alleged unconstitutionality of the act referred to.   The case was heard by the county court within and for the county of Washington, *Bicknell*, J., presiding, and judgment was rendered for the defendant.   The case is here on a bill of exceptions signed by Buttles, J., under the authority of P. L. 2071.

The grounds upon which the constitutionality of the act is challenged may be stated as follows:

1. That it contravenes section 2 of Article IV of the federal Constitution which provides that the citizens of each state shall be entitled to all the privileges and immunities of the citizens in the several states.

2. That it infringes the Fourteenth Amendment to that Constitution, which provides that no state shall deprive any person of life, liberty, or property without due process of law or deny to any person within its jurisdiction the equal protection of the laws.

3. That it violates Articles I and VII of our Bill of Rights, which, speaking broadly, provide for the equality of individuals before the law.

4. That it results in an unwarranted interference with interstate commerce.

5. That it attempts to tax the income from dividends on stock in foreign corporations which is tantamount to a tax on the stock itself which has a taxable *situs* beyond the jurisdiction of this State.

██ In their practical application, these several provisions have much in common; and as applied to the case in hand, simply mean that the act and the taxes raised thereunder must be, in a legal sense, uniform and equal. This requirement affects both persons and things; but is met when the law in question imposes no greater burden on one person or species of property than on another similarly situated or of like character.

█ So far as supposable cases in which a tax law bears more or less unfairly upon an individual taxpayer are concerned, it is quite enough to say, as we did say in *Clark* v. *City of Burlington,* 101 Vt. 391, 410, 143 Atl. 677, on the strength of *Dane* v. *Jackson,* 256 U. S. 589, 65 L. ed. 1107, 41 Sup. Ct. 566, that a tax law is not in conflict with the Fourteenth Amendment unless it ''proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received as to amount to the arbitrary taking of property without compensation—'to spoliation under the guise of exerting the power of taxing.' '' This is so, because a system of taxation has not yet been devised that bears with exact equality and justice upon each and every taxpayer or class of taxpayers, and it lies not in the power of the court or any other authority except the

Legislature to correct such inequalities unless they contravene federal authority or are of the serious quality above indicated.

■ So in the matter of exemptions and deductions, · the Legislature is vested with the widest latitude of discretion, and it is only in very exceptional cases that the courts can interfere. Thus, express constitutional restrictions aside, it may exempt an income not exceeding a certain amount. *In re Opinion of the Justices,* 82 N. H. 561, 138 Atl. 284, 289. It may make different exemptions as to earned income and income from intangibles. *In re Opinion of the Justices,* 84 N. H. 557, 149 Atl. 321, 327; *McPherson* v. *Fisher,* 143 Ore. 615, 23 Pac. (2d) 913; *In re Opinion of the Justices,* 270 Mass. 593, 170 N. E. 800, 803. It may allow reasonable deductions of business expenditures from business income. *In re Opinion of the Justices,* 85 N. H. 570, 154 Atl. 632, 633; *State* v. *Wisconsin Tax Commission,* 185 Wis. 525, 201 N. W. 764, 766. It may provide for a graduated progressive rate. *Bacon* v. *Ransom,* 331 Mo. 985, 56 S. W. (2d) 786. It may allow a reasonable personal exemption and a reasonable deduction for dependents. *In re Opinion of the Justices,* 84 N. H. 557, 149 Atl. 321, 327; *In re Opinion of the Justices,* 270 Mass. 593, 170 N. E. 800, 803. It may exempt money loaned on local real estate at a rate of interest not exceeding five per cent. *In re Opinion of the Justices,* 76 N. H. 609, 85 Atl. 757, 758; *In re Opinion of the Justices,* 82 N. H. 561, 138 Atl. 284, 291.

That any scheme of taxation must stand this test of uniformity and equality is too well established to be now disputed. It is not here disputed.

■ That this requirement does not forbid classification of persons or property for purposes of taxation, is equally well established, and is not here questioned.

■ So the vital question is one of classification. That the power of the Legislature in these matters is very broad is everywhere admitted; and that it is limited only by the requirements, (1) that the classification must be based upon a rational ground —some difference that bears a just relation to the purpose to be served—and (2) that the members of the several classes shall be treated alike is the unquestioned law of this State. *State* v. *Hoyt,* 71 Vt. 59, 42 Atl. 973; *Village of Hardwick* v. *Town of Wolcott,* 98 Vt. 348, 129 Atl. 159, 39 A. L. R. 1222; *State* v. *Caplan,* 100 Vt. 140, 135 Atl. 705; *Clark* v. *City of Burlington,*

101 Vt. 391, 143 Atl. 677; *Hartland* v. *Damon's Estate,* 103 Vt. 519, 525, 156 Atl. 518; *City of Montpelier* v. *Gates et al.,* 106 Vt. 116, 124, 170 Atl. 473. That this is the rule of the United States Supreme Court appears from a long line of cases extending from *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 33 L. ed. 892, 10 Sup. Ct. 533, to *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 76 L. ed. 1102, 52 Sup. Ct. 556, 87 A. L. R. 374, most of which are cited in our cases, above.

The Income and Franchise Tax Law (Laws 1931, No. 17) divides taxable income into two classes: A. Business income, so denominated in the return called for by the act, which includes salaries, wages, rents, fees, etc., from the aggregate of which the taxpayer may deduct certain items of interest paid, contributions, bad debts incurred, etc. B. Intangible income including interest, except interest on money loaned in this State at a rate of interest not exceeding five per cent, dividends on stock in domestic and foreign corporations, not including stock of corporations subject to a franchise tax under Part II of the act, etc., subject to certain exemptions not here important, and subject also to a certain personal exemption and a specified dependency exemption, if the income is derived wholly from such intangibles.

The petitioner was not taxable on account of Class A income, as his allowable deductions exceeded the amount received. But by the act, he was taxable for a large sum on account of Class B income, which came very largely from dividends on foreign corporations doing little or no business in this State. His claim here is that he is prejudiced by a discriminatory tax on such stock, and that the law is unconstitutional in that it attempts to tax income earned outside the State of Vermont, and because the exemption of five per cent. loans applies only to loans in this State.

■ It may be granted at the outset that a classification for taxing purposes based solely upon residence would be unlawful. A state cannot discriminate against a nonresident simply because he is a nonresident. *Sprague* v. *Fletcher,* 69 Vt. 69, 75, 37 Atl. 239, 37 L. R. A. 840; *State* v. *Caplan,* 100 Vt. 140, 154, 135 Atl. 705; *Howe Machine Co.* v. *Gage,* 100 U. S. 676, 25 L. ed. 754. But this proposition by no means impinges upon the power of a state to make reasonable classifications for taxing purposes. It simply condemns one basis of classification. It

points out a single limitation of the power of classification. It only illustrates the inability of a state, under the guise and form of classification, to enforce a tax law which in its practical application abridges the equality of privilege secured to the citizenry of the whole country by the federal Constitution, unless that classification is based upon reasonable grounds according to the rule hereinbefore referred to. Then, too, as has been pointed out in some of the cases, the principle of this limitation must not be pressed too far. As Mr. Justice Holmes says in *Noble State Bank* v. *Haskell et al.*, 219 U. S. 104, 55 L. ed. 112, 116, 31 Sup. Ct. 186, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, "Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guaranties in the Bill of Rights."

■ ■ It is not necessary that the basis of the classification should be deducible from the nature of the things classified. It is enough if the classification is reasonably founded in "the purposes and policy of taxation." *Clark* v. *City of Burlington*, 101 Vt. 391, 406, 143 Atl. 677, 683; *Watson* v. *State Comptroller of New York*, 254 U. S. 122, 65 L. ed. 170, 175, 41 Sup. Ct. 43; *Stebbins* v. *Riley*, 268 U. S. 137, 69 L. ed. 884, 889, 45 Sup. Ct. 424, 44 A. L. R. 1454. Not only this, but in the Clark Case we expressly approved the proposition that the basis of tax classification is not open to objection unless it precludes the assumption that the classification was made in the exercise of legislative judgment and discretion, as laid down in *Campbell* v. *California*, 200 U. S. 87, 50 L. ed. 382, 388, 26 Sup. Ct. 182, and in *Stebbin* v. *Riley*, 268 U. S. 137, 69 L. ed. 884, 889, 45 Sup. Ct. 424, 44 A. L. R. 1454.

■ ■ It has long been the law of the federal court that the Fourteenth Amendment was not intended to prevent a state from adjusting its system of taxation to its necessities in all proper and reasonable ways. It does not compel a state to adopt an iron rule of equal taxation. It does not compel a resort to close distinctions. or the maintenance of precise scientific uniformity. "Possible differences * * * not shown to be substantial or which are based upon discriminations not shown to be arbitrary or capricious, do not fall within constitutional prohibitions." *Lawrence* v. *State Tax Commission*, 286 U. S. 276, 76 L. ed. 1102, 1108, 52 Sup. Ct. 556, 559. The amendment.

does not preclude the exercise of a wide legislative discretion in passing tax laws which, though involving reasonable discriminations and material qualifications, are deemed necessary for the encouragement of needful and useful industries, and the development of its material and economic interests. *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 33 L. ed. 892, 895, 10 Sup. Ct. 573; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339, 35 L. ed. 1035, 1039, 12 Sup. Ct. 250; *Barbier* v. *Connolly,* 113 U. S. 27, 23 L. ed. 923, 925, 5 Sup. Ct. 357. Exemptions, diversity of taxation, both as to the amount imposed and the species of property selected, are not inconsistent with uniformity and equality in a legal sense of those terms.

It follows, therefore, that it is not every difference in treatment of a foreign corporation that is discriminatory in the sense that makes it unconstitutional. Any such difference that reasonably results from circumstances and conditions inhering in the difference of residence and is proportional thereto will be upheld.

*Bacon* v. *Board of State Tax Commissioners,* 126 Mich. 22, 85 N. W. 307, 60 L. R. A. 321, 86 A. S. R. 524, involved the constitutionality of a tax law that required an inhabitant of Michigan to pay a tax on all his shares in foreign corporations except national banks, while his shares in domestic corporations were only taxable when the property of such corporation was untaxed. It was pointed out that the person holding stock in a domestic corporation when property was taxed was not taxed on such stock, while he was taxed on his stock in a foreign corporation, whether its property was taxed or not, and it was claimed that if a law exempted the stock of a domestic corporation under certain conditions it must exempt that of a foreign corporation under the same conditions; and that for lack of this, the law in question resulted in lack of uniformity and equality, and was unconstitutional. It was held otherwise. The court in effect said that while the state of Michigan had no jurisdiction to tax the property of a corporation located outside of its boundaries, it might lawfully tax the stock of such corporations held by its citizens in the way provided by the statute. Among others, the court cites the case of *Insurance Co.* v. *New Orleans,* 1 Woods, 89, Fed. Cas. No. 7,052, which has been frequently approved by the courts. That was a suit to recover a $1,000 tax on a foreign insurance company. It was defended

on the ground that the same statute imposed a tax of but $500 on a domestic insurance company. And it was claimed that the law violated the equality and uniformity clause of the state constitution. The claim was not sustained.

So in *Kidd* v. *Alabama,* 188 U. S. 730, 47 L. ed. 669, 670, 23 Sup. Ct. 401, it was held that a tax on stock of a railroad incorporated in another state held by a resident of Alabama was valid, though no such tax was imposed upon the stock of domestic railroads or those doing business in that state. See, also, *Pembina Consol. Silver M. & M. Co.* v. *Pennsylvania,* 125 U. S. 181, 31 L. ed. 650, 8 Sup. Ct. 737.

The right of this State to tax the petitioner's stock in the foreign corporations or the income thereof under the mobilia doctrine is assured. Though the federal Supreme Court, in its zeal to avoid the evils of multiple taxation, has laid waste many of its own decisions regarding the taxable locus of tangible personal property, and almost countless state decisions on that subject, it has not yet denied such right. In *First National Bank* v. *Maine,* 284 U. S. 312, 76 L. ed. 313, 52 Sup. Ct. 174, 178, 77 A. L. R. 1401, 1408, Mr. Justice Sutherland, speaking for the Court, calls attention to the changing conditions which influenced the disregard of the ancient maxim *mobilia sequuntur personam* as applied to personal property having a fixed and determined *situs,* says: "But in respect of intangible property, the rule is still convenient and useful, if not always necessary; and it has been adhered to as peculiarly applicable to that class of property." It is to be observed, however, that the learned Justice was careful to note that shares of stock and other intangibles might be so used in the foreign state as to acquire an actual *situs* there analogous to that of tangible personal property under the recent holdings of the Court. There is nothing in the case in hand, however, to indicate any such foreign *situs.*

It was held in *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 25 L. ed. 558, 562, that a state may lawfully tax a debt due from a nonresident, and that such a law does not violate any of the constitutional provisions here relied upon by the petitioner.

And finally, *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 76 L. ed. 1102, 52 Sup. Ct. 556, 87 A. L. R. 374, affirms the new rule as to *situs* of tangible personalty, shows the inapplicability of that rule to the taxation of intangibles, and holds that

a state statute taxing a resident on income earned in another state is valid and enforceable.

■ With these principles in mind the difficulties presented by the record largely disappear. Under them, the first, second, and third grounds above stated are unavailing.

■ There is no merit in the claim that this tax unlawfully interferes with interstate commerce. It is not a tax against the corporation or upon its property. It is a tax against the individual and upon his property. It imposes no restrictions upon the transportation into this State of the products of the foreign corporation or upon their sale here. It does not take effect until the interstate transportation, if any, has been completed, the goods sold, money collected, a dividend declared and paid. The activities of the corporation are not, in the slightest degree, embarrassed or affected. *Pembina Consol. Silver M. & M. Co.* v. *Pennsylvania,* 125 U. S. 181, 31 L. ed. 650, 652, 8 Sup. Ct. 737; *Heisler* v. *Thomas Colliery Co.,* 274 Pa. 448, 118 Atl. 394, 24 A. L. R. 1215, 1223; *Shaffer* v. *Carter,* 252 U. S. 37, 64 L. ed. 445, 459, 40 Sup. Ct. 221; *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 25 L. ed. 558, 562; *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 61 L. ed. 480, 492, 37 Sup. Ct. 217, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643, and cases cited.

■ Nor is there any merit in the claim that the petitioner is unduly prejudiced by the exemption of dividends of corporations subject to a franchise tax or in the method of arriving at the basis of the franchise tax. It is to be noted that, throughout the act, foreign and domestic corporations are treated alike. The exemptions provided for in Part I apply to both. The franchise tax of Part II applies to both. The basis of that tax is the same—the amount of business done in this State. If all that business is done in this State, the entire net income is subject to the franchise tax. If only part of the business is done here, the net income of that part is, alone, subject thereto. And that part of the dividends earned outside the State is, alone, subject to the income tax. All of these provisions apply as well to domestic as foreign corporations. The purpose of these provisions is obvious. The Legislature, in the exercise of a wise discretion, thus avoided a double tax on a single economic interest. It obviated the imposition of an income tax and a franchise tax on things so intimately related as to be entitled to

the special consideration of the Legislature in framing its taxing scheme.

Income taxes may result in double taxation, and frequently do, and yet they are valid. A nonresident may be taxed on the franchise of doing business in this State, and the income from that business may also be taxed here. *Shaffer* v. *Carter*, 252 U. S. 37, 64 L. ed. 445, 458, 40 Sup. Ct. 221. The State has as much taxing authority over a resident. But there is no constitutional requirement that income taxes shall be levied without regard to multiple taxation, and the Legislature is not precluded from avoiding such a result if it can do so without transgressing the limits of valid classification as herein defined. Such a deduction as is now under discussion is in essence a means of equalizing the burden of taxation rather than an exemption. *State* v. *Frear*, 148 Wis. 456, 134 N. W. 673, L. R. A. 1915B, 569, 606, Ann. Cas. 1913A, 1147, 1156. The provision is free from constitutional objections and is well within the principles laid down in *Kidd* v. *Alabama*, 188 U. S. 733, 47 L. ed. 669, 672, 23 Sup. Ct. 402, and *Darnell* v. *Indiana*, 226 U. S. 390, 57 L. ed. 267, 272, 33 Sup. Ct. 120.

In determining the basis of such taxes, even in the case of a nonresident taxpayer, the amount of business done outside the State may be used as a measure. *Maxwell* v. *Bugbee*, 250 U. S. 525, 63 L. ed. 1124, 1131, 40 Sup. Ct. 2.

There is no constitutional infirmity in the exemption of five per cent. Vermont loans. Opinions of the Justices of New Hampshire, *supra*. The State argues that this is but an extension of a settled State policy. But we prefer to put our decision on the broad ground that a state may, in the interests of thrift and state development, make such reasonable exemptions as this. That it may so encourage its taxpayers to keep Vermont money invested here for the assistance of the agricultural and industrial interests of the State.

The petitioner claims that he was entitled to a deduction of $800 as a married man living with his wife; or, if not so entitled, the act arbitrarily and unreasonably discriminates against him and others in like circumstances, and is in this respect unconstitutional. The language of the act [Laws 1931, No. 17, Part I, § 3(e)]is as follows: ''In case the income taxed in this section is derived wholly from ownership of or interest in any stock, bond, note or other interest-bearing security,

there shall be deducted from such income'' a personal exemption of eight hundred dollars in the case of a married person living with husband or wife. But, if either a husband or wife, it is provided, shall receive any income other than that above specified, the exemption shall not be allowed. All the income taxed to the petitioner was on intangibles, but he received certain items of business income during the year. So he was not, under the statute, entitled to the exemption. With the practical fairness or the wisdom of these provisions we have nothing to do. We are only concerned with the constitutional power of the Legislature to enact them. The petitioner is treated by the law just as every other taxpayer, similarly situated, is treated. The Legislature has a wide latitude of discretion in these matters, and may make reasonable classifications of income from different sources. *Shields* v. *Williams,* 159 Tenn. 349, 19 S. W. (2d) 261; and, as we have seen, may provide different exemptions for different classes. *McPherson* v. *Fisher,* 143 Ore. 615, 23 Pac. (2d) 913. The claim is not sustained.

The petitioner also claims that he is entitled to a deduction from his net income of the $2,000 personal exemption provided for in Part I, section 11 of the act. An examination of the act discloses that it uses the term ''net income'' only with reference to Class A, or business income. Part I, § 3. It defines net income in Part I, section 5, as meaning the gross income less the deductions allowed by the act. Section 6 defines gross income as including the items which are included in Class A. If there is nothing left after the gross income has been reduced by these deductions, there is nothing from which the $2,000 exemption can be taken, for it is expressly provided in section 11 that it shall be deducted from the net income. This is the petitioner's situation. And, for the reasons above specified, this result does not establish the unconstitutionality of the act. This claim, too, is rejected.

We have considered all the questions raised by the record and find nothing in the statute that conflicts with the State or federal Constitution. We reach this conclusion without resort to the well-established rule that one who challenges the constitutionality of an act of the Legislature carries the burden of showing it—not only by a preponderance of evidence, but be-

yond a reasonable doubt. In such cases, the court deals not with probabilities, but with moral certainties.

*Judgment affirmed.*